Filed 8/4/21  Summit Bridge Nat. Investments IV v. Panossian CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| SUMMIT BRIDGE NATIONAL INVESTMENTS IV, LLC,<br><br>        Plaintiff, Cross-defendant and Respondent,<br><br>        v.<br><br>MEGUERDITCH PANOSSIAN,<br><br>        Defendant, Cross-complainant and Appellant. | B310067<br><br>(Los Angeles County Super. Ct. No. EC065055) |


APPEAL from a judgment of the Superior Court of Los Angeles County, Curtis A. Kin, Judge.  Dismissed.

The Jamison Law Firm, Guy E. Jamison and Chelsea M. Clayton for Defendant, Cross-complainant and Appellant.

Parker, Milliken, Clark, O'Hara & Samuelian, Thomas E. Shuck and Alan Weinfeld for Plaintiff, Cross-defendant and Respondent.

Defendant, cross-complainant, and appellant Meguerditch Panossian (Panossian or Guarantor) appeals from the stipulated judgment entered in favor of plaintiff, cross-defendant, and respondent Summit Bridge National Investments IV, LLC (Summit Bridge or Lender).  Panossian expressly stipulated and agreed that the stipulated judgment "shall not be appealable." We therefore dismiss the appeal.  (*Harrington-Wisely v. State of California* (2007) 156 Cal.App.4th 1488, 1495.)

## BACKGROUND

**The loans, guaranty, and default**

Panossian and Idak Avakian were the sole shareholders of GentleCare Transport, Inc. (GentleCare).  Panossian and Avakian personally guaranteed loans in the total principal amount of $1.83 million made to GentleCare by JPMorgan Chase Bank, N.A. (Chase), in 2013 and 2014 (the loans).  Chase assigned the loans to Summit Bridge on December 24, 2015.

In mid-2014, Panossian and Avakian sold GentleCare to Artine Safarian and Robert Spiro.  Safarian and Spiro formed a successor entity named MedCoast and defaulted on the loans.

On May 4, 2016, Summit Bridge sued GentleCare, Panossian and Avakian for breach of the loan agreements and guarantees.  Panossian filed a cross-complaint against GentleCare, MedCoast, Safarian, Spiro, and Chase, asserting causes of action for fraud and negligent representation against Safarian and Spiro and contractual indemnity against GentleCare.

**The settlement agreement**

In October 2018, Summit Bridge and Panossian executed a settlement agreement and a stipulation for entry of judgment.

2

The settlement agreement required Panossian to pay Summit Bridge, by April 24, 2020, (1) $123,000 from the sale or refinancing of certain real properties, and (2) "50% of the Net Proceeds recovered from Guarantor's Cross-Complaint, with Lender's total recovery from the sale of the Properties and from Guarantor's Cross-Complaint capped at $448,000.00." The settlement agreement defined "Net Proceeds" as "any and all amounts recovered from Guarantor's Cross-Complaint by trial, settlement, or any other means, minus contingency fees paid to counsel for Guarantor."

The settlement agreement further required Panossian to "continue to prosecute Guarantor's Cross-Complaint with due diligence and with dispatch, unless and until Guarantor determines, by an objective good faith standard, and with Lender's concurrence, that continued prosecution of Guarantor's Cross-Complaint would generate no more than a de minimus financial realization." Panossian's obligation to prosecute his cross-complaint continued until March 1, 2020.

The settlement agreement entitled Summit Bridge to enter a stipulated judgment for the full amount of the debt if Panossian defaulted on any condition, covenant, or obligation set forth in the agreement:

> "3. <u>Payment by Guarantor</u>. The Parties agree that, in consideration of settlement of the Litigation, Guarantor shall timely perform each and every condition set forth in this Agreement. Should Guarantor fail to timely perform each and every condition, covenant and obligation set forth in this Agreement, Lender shall be released from its agreement to accept an amount less than full payment of the Total Indebtedness in satisfaction of the Loan Documents and may exercise any and all

3

rights and remedies provided under this Agreement. [¶] . . . [¶]

"5. <u>Stipulation for Judgment in Full Amount Upon Default</u>. The Parties have further stipulated and agreed, as evidenced by Guarantor's signature on the concurrently-executed Judgment Stipulation, that should Guarantor default under the terms of this Agreement, judgment against Guarantor may immediately be entered by the Court as follows:

"a. In favor of Lender and against Guarantor in the amount of the Total Indebtedness, plus costs, fees and interest accruing at the legal rate of 10% per annum from the Effective Date of this Agreement, to the date of entry of judgment, less any amounts recovered by Lender, if any, and less any payments made by Guarantor under this Agreement up to the time of the Event of Default (as defined below) resulting in the filing of the Judgment Stipulation . . . ."

Panossian expressly agreed that the stipulated judgment, if entered, would not be appealable: "Guarantor stipulates and agrees that the judgment to be entered pursuant to the Judgment Stipulation shall not be appealable."

**Panossian's motion to enforce settlement and Summit Bridge's request for entry of judgment**

On April 15, 2020, Panossian paid Summit Bridge $123,0000, which Summit Bridge received under protest. On April 22, 2020, Summit Bridge sent a notice of default to Panossian. On April 20, 2020, Panossian filed a motion to enforce the settlement under Code of Civil Procedure section

4

664.6,[1] arguing he fulfilled all obligations under the settlement agreement.  On June 4, 2020, Summit Bridge filed a declaration from its counsel requesting entry of the stipulated judgment, based on Panossian's failure to prosecute his cross-complaint "with due diligence and with dispatch," an event of default under the settlement agreement.

On September 4, 2020, the trial court held a preliminary hearing on Panossian's section 664.6 motion.  The court found that Panossian failed to provide evidence that he complied with his obligation to prosecute his cross-complaint "with due diligence and with dispatch":

> "[I]n addressing the parties' competing claims for relief, the Court must ultimately determine whether Panossian acted 'with due diligence and dispatch' in prosecuting his cross-complaint between October 24, 2018 (the effective date of the Settlement Agreement) and March 1, 2020 (the deadline for attempted recovery set forth in ¶ 2.1(b)).  On this record, the Court cannot do so.  Merely citing a list of occurrences and the fact that one of the cross-defendants (MedCoast Med Services Inc.) is in bankruptcy, Panossian makes the conclusory assertion that he 'diligently prosecuted [his] Cross-Complaint from October 2018 through April 2020."

The trial court gave Panossian an additional five weeks to obtain the necessary evidence and continued the hearing on the motion to enforce settlement and on Summit Bridge's request for entry of judgment to November 6, 2020.

---

[1]     All statutory references hereafter are to the Code of Civil Procedure.

**November 6, 2020 hearing and trial court ruling**

At the November 6, 2020 hearing, the trial court heard testimony from Panossian's counsel and his bankruptcy attorney. Summit Bridge submitted declarations from its counsel.

The trial court issued a detailed ruling on November 10, 2020, denying Panossian's section 664.6 motion to enforce settlement, finding that he did not prosecute the cross-complaint "with due diligence and with dispatch" between October 24, 2018, and March 1, 2020. The trial court granted Summit Bridge's request for entry of stipulated judgment, which was entered on December 16, 2020.

## DISCUSSION

Summit Bridge contends Panossian's appeal should be dismissed based on lack of standing because Panossian stipulated and agreed in both the settlement agreement and the stipulation for entry of judgment that the stipulated judgment "shall not be appealable." Panossian argues that he is not appealing from the stipulated judgment, but from the order denying his section 664.6 motion to enforce the settlement agreement.

Panossian's notice of appeal indicates that his appeal is from a judgment after a court trial, and not from the order denying his motion to enforce settlement. Panossian expressly waived the right to appeal the judgment. "'It is well-settled that a party may expressly waive its right to appeal subject to only a few conditions: 1. The attorney must have the authority to waive a party's right to appeal. 2. The waiver must be express and not implied. 3. The waiver must not have been improperly coerced by the trial judge.'" (*PG&E "San Bruno Fire" Cases* (2019) 43 Cal.App.5th 596, 607.) Panossian fails to demonstrate that any

of these conditions preclude enforcement of his waiver of the right to appeal.  The appeal accordingly must be dismissed.  (*Ibid.*)

Panossian's purported challenge to the order denying his section 664.6 motion does not salvage his appeal.  The trial court's order denying the motion to enforce the settlement is a nonappealable interlocutory order.  (*Doran v. Magan* (1999) 76 Cal.App.4th 1287, 1292-1294 (*Doran*).)  Panossian cites no statute that authorizes the appeal of interlocutory section 664.6 orders.

Nonappealable interim orders are reviewable on appeal from a final judgment.  (*Doran, supra*, 76 Cal.App.4th at pp. 1292-1294.)  Panossian's notice of appeal indicates that he appeals from the judgment; however, Panossian expressly waived his right to do so.

## DISPOSITION

The appeal is dismissed.

_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
ASHMANN-GERST, J.

7